AO 106 (Rev. 5/85) Affidavit for Search Warrant

# United States District Court

Southern **DISTRICT OF** California

FILED 2008 AUG 29 PM 4:49
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

| In the Matter of the Search of<br>(Name, address or brief description of person or property to<br>Parcel #1 lists the following information: tracking # 0308-1400-0002-1999-8275; is addressed to Ms. Debbie Cooper, 4443 Centennial Dr., Orlando, FL 32808; it lists the return information of Mr. Chris Andy Cooper, 7990 Lemon Cricle Ct., La Mesa, CA 91941. | **APPLICATION AND AFFIDAVIT**<br><br>**FOR SEARCH WARRANT**<br><br>CASE NUMBER: **'08 MJ 2669** |
|---|---|

I,     Ana L. Flores     being duly sworn depose and say:

I am a(n)    U. S. Postal Inspector    and have reason to believe
           Official Title

that on the premises known as (name, description and/or location)
Parcel #1 lists the following information: tracking # 0308-1400-0002-1999-8275; is addressed to Ms. Debbie Cooper, 4443 Centennial Dr., Orlando, FL 32808; it lists the return information of Mr. Chris Andy Cooper, 7990 Lemon Cricle Ct., La Mesa, CA 91941 which is in the custody of the U. S. Postal Inspection Service

in the Southern        District of California

there is now concealed property, namely (describe the person or property)
Controlled substances, materials, and documents reflecting the distribution of controlled substances through the United States Mail, including money paid for controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence and contraband

in violation of Title 21     United States Code, Section(s) 841(a)(1), 843(b) and 846.
The facts to support the issuance of a Search Warrant are as follows:
See attached.

Continued on the attached sheet and made a part hereof.     X Yes     ___ No

_Ana Flores_
Signature of Affiant

Sworn to before me, and subscribed in my presence

8/22/08
Date

at    San Diego, CA
     City and State

**BARBARA L. MAJOR**
**U.S. MAGISTRATE JUDGE**
U.S. Magistrate Judge
Name and Title of Judicial Officer

_Barbara L. Major_
Signature of Judicial Officer

## AFFIDAVIT FOR SEARCH WARRANT

I, Ana Flores, being duly sworn hereby depose and state:

1. I am a United States Postal Inspector currently assigned to the San Diego Field Office of the Postal Inspection Service and my duties include investigating violations of the Drug Abuse Prevention and Control Act.

2. This affidavit is submitted in support of an application for a search warrant for the following Four Priority Mail with Delivery Confirmation parcels; hereinafter referred to as Parcels #1, #2, #3, and #4.

3. Parcel #1 lists the following information: tracking # 0308-1400-0002-1999-8275; is addressed to Ms. Debbie Cooper, 4443 Centennial Dr., Orlando, FL 32808; it lists the return information of Mr. Chris Andy Cooper, 7990 Lemon Cricle Ct., La Mesa, CA 91941.

4. Parcel #2 lists the following information: tracking # 0308-1400-0002-1999-8282; is addressed to Mr. & Mrs. E. Langstons, 3825 Falling Leaf Ln., Orlando, FL 32810; it lists the return information of Mrs. C. Jones, 848 N. Mollison Ave. B, El Cajon, CA 92021.

5. Parcel #3 lists the following information: tracking # 0308-1400-0002-1999-8305; is addressed to Mrs. Lynn Brown, 6002 Canyon De Chelley Ct., Orlando, FL 32810; it lists the return information of Mr. and Mrs. Deanna Wilson, 4203 Marian St., La Mesa, CA 91941.

6. Parcel #4 lists the following information: tracking # 0308-1400-0002-1999-8299; is addressed to Mr. James Owen, 4804 Becon St., Orlando, FL 32808; it lists the return information of Mrs. Kelly Owen, 4063 La Mesa Blvd. #4, La Mesa, CA 91941.

7. I have been employed as a Postal Inspector since July 2003. From October 2003 through September 2005, I was assigned to the Internal Crimes / Mail Theft Investigations Team. Previous to that, I was employed with the United States Postal Service (USPS) for more than eight years. In July 2006, I received specialized training from the U.S. Postal Inspection Service which included instruction regarding individuals using the U.S. Mails to transport controlled substances and proceeds from the sale of controlled substances as well as the use of Postal

Money Orders and other negotiable instruments to launder the proceeds of controlled substances transactions. In May 2007, I completed 80 hours narcotics investigations training by attending the Drug Enforcement Administration's Basic Narcotic Investigator School. In November 2007, I completed 30 hours training from the California Narcotics Officers Association, relative to the investigation of narcotics trafficking.

8. I have been involved in more than 100 investigations involving the shipment of illegal narcotics and controlled pharmaceuticals as well as drug proceeds through the US Mails. I have also investigated individuals who have used US Postal Money Orders, commercial money orders and other types of negotiable instruments to launder the proceeds of illegal narcotics and controlled pharmaceuticals. These investigations have resulted in the arrests of individuals involved in the illegal mailing of narcotics, the seizure of illegal narcotics, controlled pharmaceuticals and proceeds of illegal narcotics and controlled pharmaceuticals.

9. Based upon my training, experience and discussions with other Postal Inspectors and agents I know the following in summary:

   a. Individuals who regularly handle controlled substances leave the scent of controlled substances on the currency and other items they handle. Proceeds from these sales are often stored in close proximity to the controlled substances, thereby transferring the odor of the controlled substance to the monies and packaging materials. Narcotic canines are trained to alert on the scents of controlled substances.

   b. The Postal Inspection Service and DEA Narcotic Task Force Commercial Interdiction Team have worked aggressively to limit the use of shipping companies and the U.S. Mail for the transportation of controlled substance through these companies.

   c. Ongoing investigations have disclosed that Priority/overnight and "two day" parcel deliveries have become a method of choice by drug dealers for the transportation of contraband or the proceeds of narcotic sales.

   d. I know that Southern California is a source region for controlled substances being mailed throughout the United States. The proceeds from these narcotic transactions are then

        transported via the U.S. Mails and other communication facilities back to Southern California, the source of the controlled substances.

e.    Drug dealers prefer the U.S. Mail, (but will sometimes utilize commercial shipping companies), specifically "Express Mail" or "Priority Mail," for the narcotic or narcotic proceeds transportation for various reasons, some of which are listed below:

    1.    Items sent via "Express Mail" or "Priority Mail" are considered to be first-class mail, therefore, cannot be examined without a Federal Search Warrant.

    2.    "Express Mail" is usually requested to be delivered by the next day's mail.

    3.    "Priority Mail" is usually requested to be delivered within two days of mailing.

    4.    Dispatch times for "Express Mail" are specific and are controllable by the mailer/shipper.

    5.    Any delay to the mail is an indication to the mailer the mail items have been possibly compromised by law enforcement agencies to obtain a search warrant.

    6.    While it is not always the case that a delay of "Express Mail" or "Priority Mail" is for law enforcement purposes, those involved in illegal transactions have found that the odds are against delays in deliveries of "Express Mail" or "Priority Mail" by United States Postal Service.

    7.    "Express Mail" and Priority Mail" may weigh up to 70 pounds and is desired for large volume shipments.

f.    Businesses are more likely to use Express Mail and Priority Mail than First-class Mail in the course of normal business and will often use an Express Mail Corporate Account Number for the billing of the mailed articles.

g.    Criminals who are involved in trafficking of controlled substances and drug proceeds will often receive multiple Express Mail articles within a short time period of each other.

h. Criminals who are involved in trafficking of controlled substances and drug proceeds will often use multiple Post Office Boxes, Commercial Receiving Agencies and addresses in foreign countries to conceal their true identities and place of residence.

i. I also know that drug orders containing currency, checks or money orders sometimes do not contain the presence of controlled substances because persons involved in shipping often utilize packing methods and sanitation procedures to conceal the odor or controlled substances.

j. I also know from talking to U.S. Postal Service Supervisors and employees responsible for handling the mail that Express Mail is insured for up to $100 in case of loss or damage. Insurance for Priority Mail may be purchased at an additional fee. Customers are discouraged from sending U.S. currency via the U.S. Mails and are encouraged to purchase negotiable instruments as a means to send currency by the U.S. Postal Service.

k. I also know through my training and experience that drug dealers will often use legitimate names and addresses of persons other than their own, or occupants at the residence, in order to receive controlled substances and/or proceeds/monetary instruments at their residence under names other than their own and to avoid suspicion.

10. On August 19, 2008 an employee from the La Mesa Post Office located in San Diego, CA contacted Postal Inspector Kelly Cain and notified him regarding the mailing of four suspicious parcels. On August 20, 2008, Inspector Cain retrieved all four parcels and retained them for further investigation.

11. On August 20, 2008, Inspector Cain transferred the parcels into my custody for follow-up investigation.

12. The information in this affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience as well as information related to me by other Postal Inspectors and law enforcement officers. Since this affidavit is being submitted for

4

the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

13. I contacted the employee from the La Mesa Post Office who had reported the suspicious parcels. The parcels were reported as suspicious for the following reasons: all four parcels were exactly the same size and were of similar weights; the parcels were clean in appearance; all four parcels listed different return addresses; the Postal employee observed the return addresses listed on three of the parcels (Parcels #1, #3 and #4) were all fictitious addresses that did not exist in La Mesa, CA.

14. Additionally, the parcels were suspicious for the following reasons: Parcels #1 and #2 had all the seams taped with a clear fiber tape; Parcels #3 and #4 had all the seams taped with a brown colored shipping tape. I know from previous investigations that drug traffickers will tape all the seams of the parcel in an effort to prevent the odor of controlled substances from emanating from within the parcel.

15. All four parcels were mailed at the same time by two adult black females. Although I am not a handwriting expert, I compared the handwriting on all four parcels and the handwriting appeared to be the same and appeared to have been written by the same person.

16. I conducted name and address inquiries on all four parcels and learned the following:

- Parcel #1: The return name and address is fictitious; the addressee name of Debbie Cooper is not known at the address 4443 Centennial Dr., Orlando, FL;

- Parcel #2: The return address is valid, however, the name listed on the return of C. Jones is not known at that location; the addressee name of Mr. & Mrs. E. Langstons is not known at the address 3825 Falling Leaf Ln., Orlando, FL;

- Parcel #3: The return name and address is fictitious; the addressee name of Lynn Brown is not known at the address 6002 Canyon De Chelley Ct., Orlando, FL;

- Parcel #4: The return name and address is fictitious; the addressee name of James Owen is not known at the address 4804 Becon St., Orlando, FL.

17. On August 21, 2008 I met with San Diego Police Detective John McGill and his trained narcotic detection canine, Jake, at DEA Headquarters located in San Diego, CA. Detective McGill and Jake conducted an exterior inspection of the subject parcels. When Jake examined the parcels described above, Detective McGill advised that Jake had alerted to the presence of the odor of controlled substances in Parcel #1 and #3 but did not alert to Parcel #2 and #4. I secured the subject parcels pending an application for a search warrant. The qualifications of canine Jake are contained in attachment A.

18. Although canine Jake did not alert to the presence of the odor of controlled substances on Parcels #2 and #4, it has come to my attention during recent inspections of parcels discovered during interdiction activities, that drug traffickers are utilizing extreme measures to shield the odor of the controlled substance from the canine. Such measures include wrapping the contents in multiple layers of plastic and masking odors through use of liquid soap, detergent, dryer sheets, etc. Additionally the seams and flaps of parcels are being glued and taped to prevent the odor of controlled substances from emanating from within the parcels. In the case of the four subject parcel described in this affidavit, the seams of all the parcels were taped with either clear fiber tape or brown shipping tape.

/
/
/
/
/
/
/
/
/
/
/
/

19. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe controlled substances, notes and/or currency from the illegal sale and mailing of controlled substances is being concealed in the subject parcel(s) as described above and seek the issuance of a search warrant(s) directing the search of the article(s) as described above and the seizure of the article(s), any controlled substances, currency, and/or materials and documents reflecting the distribution of controlled substances, all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

*Ana Flores*
Ana Flores
Postal Inspector

Sworn to before me, and subscribed in my presence, on this
22nd Day of Aug, 2008.

*Barbara L. Major*
U. S. Magistrate Judge

## ATTACHMENT A
## For
## John T. McGill and K-9 Jake

I am currently a detective for the San Diego Police Department (SDPD) assigned to the San Diego Integrated Narcotic Task Force (NTF) and deputized as a Federal Officer with the Drug Enforcement Administration. I have been a police officer for over 22 years and have worked as a narcotic detection dog handler since 2004. I am a member of the California Narcotic Canine Association.

I have participated in over 500 arrests of persons for violations of controlled substance laws. I have in excess of 200 hours of formal training and extensive experience in controlled substances investigations, particularly involving marijuana, methamphetamine, heroin, and cocaine, including the 80 hour DEA narcotic investigator course, 40 hour California Narcotic Canine investigator course, 40 hour DEA Operation Jetway investigator course and 40 hour California Bureau of Narcotic Enforcement Clandestine Laboratory investigator course. I have testified as an expert in the field of narcotics in state court. I am familiar with the manner in which said substances are packaged, marketed and consumed. I have received formal training and field experience in the identification of all types of controlled substances, particularly those mentioned above, by sight and odor. I have worked in an undercover capacity in purchasing controlled substances.

From February 1999 to December 2003, I was assigned to an enforcement team with the San Diego Narcotic Task Force. I was involved in

over 100 cases either as the case agent or assisting detective. I have observed hundreds of persons involved in narcotic trafficking and have developed an expertise in observing certain characteristics, of which one or more are commonly evident in the majority of narcotic smuggling cases.

On January 5, 2004, I was assigned to the NTF Commercial Interdiction Team. I have been involved in over 500 parcel cases where I have utilized surveillance techniques, profiles of persons and parcels and my narcotic detection canine. I have observed several hundred parcels during the course of my duties. On selected parcels, I have observed certain characteristics that although not illegal, when taken in their totality lead me to believe the parcel contains controlled substances. These include illegible or non-existent return addresses, misspelled street names, handwritten labels, taped in an unusual manner, strong masking odors emitting from the parcel and/or cash payment

Until recently, I have been able to confirm my suspicions by utilizing a narcotic detection canine to alert to packages. It has come to my attention during recent inspections of parcels containing controlled substances discovered during routine audits by United Parcel Service, United States Post Office and Federal Express that the smugglers are utilizing extreme measures to shield the odor of the controlled substance from the canine.

In November 2007, I was assigned to train K9 "Jake" in the area of narcotic detection. Jake and I received 40 hours of training in the detection of marijuana, heroin, methamphetamine and cocaine from SDPD narcotic canine trainer Steve Sloan and 40 hours of training from Mary Ann Bohnett. Steve

Sloan and Mary Ann Bohnett are certifying official for the California Narcotic Canine Association.

On January 31, 2008, "Jake" was certified as 100% proficient in the detection of same by California Narcotic Canine Association certifying official Steve Sloan.

Jake's alert consists of physical and mental reactions, which include a heightened emotional state, and coming to a complete "sit" when his physical position allows. Jake has completed a total of 80 hours of training. Subsequent to his certification, Jake has alerted five times and four search warrants had been obtained on his alerts. Jake alerts on several occasions where the controlled substances are seized when a warrant is not required because a warrant or consent had already been obtained.

Jake and I have been involved in training exercises where known controlled substances, containers, or paraphernalia were hidden. Because of the absorption of the odor, and the narcotics detection dog's inherently keen sense of smell, the narcotic detection dog will continue to alert on the container or item depending on the length of exposure to the controlled substance, the specific controlled substance, and ventilation of the item or container. The common belief is all currency in circulation is contaminated with narcotics. It has been my experience a properly trained narcotic detection canine will not alert to all currency. I witnessed searches of parcels by trained narcotic detection canines where no alert was given. The parcels later were discovered to contain substantial sums of U.S. Currency.

It has been my experience; the training of the canine regarding threshold amounts of narcotic odors is the most relevant factor regarding alerts on currency. It has been my experience the training must include the establishment of a lower threshold of approximately one gram of odor or more to ensure the canine is alerting to more than average contamination. Average contamination is reported to occur through normal handling. The canine must also be "proofed" from numerous odors including currency on a regular basis to maintain consistency. These have included food, plastic bags and wrap, tape, controlled substance adulterants, circulated US Currency, and other items. Proofing is a method used in training to ensure the canine alerts only to the odors for which it is trained to alert.

###

02/03/08